```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
_____

QUANNAH HARRIS,                  )
d/b/a LAST MINUTE CUTS,          )
                                 )
     Plaintiff,                  )
                                 )
v.                               )
                                 )   No. 21-2717-JTF-tmp
TERRY W. BARNES,                 )
TENNESSEE BOARD OF COSMETOLOGY   )
AND BARBERING,                   )
RONALD R. GILLIHAN, II, and      )
ROXANNA GUMUCIO,                 )
                                 )
     Defendants.                 )
_____

                      REPORT AND RECOMMENDATION
_____
```

Before the court is defendants joint Motion to Dismiss and for Abstention against plaintiff Quannah Harris. (ECF No. 10.) On November 12, 2021, Harris filed a *pro se* complaint against Melissa Hutson and Terry Barnes, investigators for the Tennessee Department of Commerce and Insurance, the Tennessee Board of Cosmetology and Barbering ("the Board"), Ronald R. Gillihan, II, the Chairman of the Board, and Roxanna Gumucio, the Executive Director of the Board, for alleged race discrimination against her and on behalf of students at her business, Last Minute Cuts. (ECF No. 1.) The defendants filed the present Motion to Dismiss on December 6, 2021. (ECF No. 10.) For the below reasons, it is recommended that the court grant the Motion to Dismiss as to the

claims against the Board, deny the Motion to Dismiss as to the remaining claims without prejudice, abstain from exercising jurisdiction, and administratively close the case.

### I. PROPOSED FINDINGS OF FACT

This case arises out of an ongoing dispute between Harris and the Board over the licensure of her barber and cosmetology school and salon, known as Last Minute Cuts.[1] (ECF No. 1 at 6.) This dispute has spanned across multiple state administrative complaints and federal lawsuits. On March 2, 2019, the Board formally filed an administrative complaint against Last Minute Cuts for being "non-compliant with the settlement agreement" from a prior proceeding and in violation of Tennessee statutes and regulations.[2] (ECF No. 1-5 at 2-3.) The Board specifically alleged

---

[1] Harris previously sued the Board, Gumucio, and other Board investigators for constitutional violations, alleging that she "refused to provide money or sexual favors" to Board investigators and that they retaliated against her with poor inspection results. Harris v. Biddle, No. 18-2631-MSN-tmp, 2020 WL 3980816, at *1 (W.D. Tenn. Feb. 26, 2020), report and recommendation adopted, 2020 WL 1558118. The court granted summary judgment to the defendants after Harris admitted that the investigators had not demanded money or sexual favors from her. Id. Given the organization of the present 146-page complaint, it is unclear which allegations were already addressed in the prior litigation and are thus barred by res judicata. For the limited purpose of resolving the present motion, the undersigned takes all events occurring after September 14, 2018, (the date of Harris v. Biddle's filing) as being alleged for the first time.

[2] Harris attached a copy of this "settlement agreement" to her complaint, which was executed on September 29, 2017. The agreement required Last Minute Cuts to submit monthly progress reports, log hours of students and instructors daily, follow a written student

- 2 -

that inspectors were denied access to certain records, that student absences did not line up with monthly reports Last Minute Cuts submitted to the Board, that Harris herself was always absent during unannounced inspections, and that she selectively presented records to inspectors. (Id.) Harris denies all these charges. (Id.)

This complaint was not administratively pursued until February 4, 2021, due to ongoing federal litigation between Harris and the Board. See supra n.1; (ECF No. 1-7 at 2). Pursuant to these complaints, the Board conducted an annual inspection on March 23, 2021, for the first time in nearly three years. Defendants Terry Barnes and Melissa Hutson examined Last Minute Cuts and allegedly gave "intentionally low rated scores . . . based upon false statements and representations." (ECF No. 1 at 9.) Based on this and prior inspections, the Board instituted new charges against Harris on July 1, 2021. (Id. at 10-11.) On July 27, 2021, the Board moved to summarily suspend the licensure of both the Barber and Cosmetology Schools as a temporary emergency measure pending a final hearing. (Id. at 11.) The licenses were unanimously suspended by the Board on August 2, 2021. (Id.) Harris describes this action as "retaliatory," claims the Board did not consider her response to the charges, and notes that the suspension prevented all school students from sitting for personal licensure examinations. (Id.)

---

record retention plan, and make the school premises available for inspections. (ECF No. 1-2 at 2-3.)

Harris then filed the present suit on November 12, 2021. (ECF No. 1.) Against the Board, she alleges violations of 42 U.S.C. § 1983 for retaliating against her for exercising her free speech rights, which were implicated when she filed her original federal lawsuit. (Id. at 17-18.)

Against Gumucio, Harris alleges the intentional submission of false inspection reports "to support continual harassment" against her. (Id. at 17.) She states that her procedural due process rights were violated by the preliminary suspension of Last Minute Cuts' licenses, which was done "without notice to the plaintiff or the students."³ (Id. at 21.) She also alleges Gumucio presented charges to the Board that were not noticed to her, namely the charge of selling hours. (Id. at 21-22.) Harris characterizes these actions as "Retaliation For First Amendment Right of Association," stating that Gumucio sought to punish her for her support of Pyramid Beauty Barber School during their own licensure suspension proceedings. (Id. 18-19.) Further, she claims that Gumucio's illegal actions were motivated by racial animus. (Id. at 23.) Harris states that she is not the only African-American business owner that Gumucio

---

³However, one page earlier, Harris seemingly admits that she did receive notice of these proceedings in a letter on July 27, 2021. (ECF No. 1 at 20) ("the plaintiff was notified by mail by the Department of Commerce and Insurance . . . that the public, health and welfare required immediate action in the form of a suspension and that an informal hearing would be held before the board on August 2, 2021.")

targeted and that Gumucio has "created a racially/ethnically based state agency weaponized against African-American business owners seeking equitable treatment seeking licensure by impact in violation of equal protection of the 14th amendment." (Id. at 28.)

Against Gillihan, Harris alleges a violation of her due process rights due to the improper hearing notice procedures described above. (Id. at 24-26.) Against Hutson and Barnes, Harris alleges a violation of her substantive due process rights due to their submission of false inspection reports against her. (Id. at 29-32.) For all of these violations, Harris seeks injunctive relief that would restore Last Minute Cuts' licenses and for the Board to "restore the right of the students of Last Minute Cuts who have the requisite amount of hours to test for their license." (Id. at 33.) Harris also seeks compensatory damages from Gumucio, Hutson, and Barnes, as well as attorney's fees and costs for the litigation. (Id. at 33.)

The defendants jointly filed the present motion on December 6, 2021. (ECF No. 10.) They argue that the claims against the Board should be dismissed since § 1983 does not apply to states and that the court should abstain from ruling on the claims for injunctive relief based on Younger v. Harris, 401 U.S. 37 (1971), and its progeny. (Id. at 3-4.) Harris responded to the motion on January 18, 2022, and simultaneously filed a "Motion to Stop the Attorney

General from Representing the Defendant's Gumucio, Hutson and Barnes in Their Personal Capacity." (ECF Nos. 18-20.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

To avoid dismissal for failure to state a claim under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); see also Fed. R. Civ. P. 12(b)(6). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 679.

While courts liberally construe *pro se* pleadings, even a *pro se* complaint must satisfy the plausibility standard. Barnett v. Luttrell, 414 F. App'x 784, 786 (6th Cir. 2011); see also Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) ("[T]he lenient treatment generally accorded to pro se litigants has limits."). "Courts 'have no obligation to act as counsel or paralegal' to *pro se* litigants." Matthews v. City of Memphis, No. 2:14-cv-02094,

2014 WL 3049906, at *1 (W.D. Tenn. July 3, 2014) (quoting Pliler v. Ford, 542 U.S. 225, 231 (2004)). "Courts are also not 'required to create' a *pro se* litigant's claim for him." Id. (quoting Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003)).

**B.   Claims Against the Board**

As a preliminary matter, the undersigned submits that the claims against the Board must be dismissed. The Eleventh Amendment proscribes "a suit in which the State or one its agencies or departments is named as the defendant" unless the State has waived its sovereign immunity. Pennhurst State School & Hosp. v. Haldernman, 465 U.S. 89, 100 (1984); see also Haertel v. Mich. Dep't of Corrections, No. 20-1904, 2021 WL 4271908, at *3 (6th Cir. May 11, 2021). Tennessee has not so waived. Tenn. Code Ann. § 20-13-102. Further, Harris's claims against the Board are brought under 42 U.S.C. § 1983, which is not applicable to states. Dulai v. Mich. Dep't of Cmty. Health, 71 F. App'x 479, 481 (6th Cir. 2003) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 63-64 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983)).[4] Since Harris sued a state agency under § 1983, her claims are barred by both

---

[4] Harris's response argues that Will is "inapplicable when the relief requested from the state official is prospective injunctive relief." (ECF No. 18-1 at 1.) She is correct, but this is not at issue. The defendants moved to dismiss the claims against the Board, which is not a state official, but rather the state itself.

the Eleventh Amendment and the statutory construction of § 1983 and should be dismissed accordingly.

**C.  Abstention**

The defendants argue that the court should abstain from hearing the remainder of Harris's claims under the doctrine of Younger v. Harris.[5] Younger abstention exists to preserve "equity and comity" between state and federal governments. Doe v. Univ. of Kentucky, 860 F.3d 365, 368 (6th Cir. 2017). Traditionally, the doctrine compelled federal courts to refrain from interfering with state criminal prosecutions, but it has since been extended to prevent interference with civil enforcement proceedings that are "akin to criminal prosecutions." Id. at 369 (quoting Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 72 (2013)). Specifically, the Supreme Court has noted three types of proceedings where Younger abstention may apply: (1) ongoing state criminal prosecutions, (2) civil enforcement proceedings that are akin to criminal prosecutions, and (3) civil proceedings involving "certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint, 571 U.S. at 78 (quoting New Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans, 491 U.S. 350, 368 (1989)).

---

[5]Harris argued in a separate motion that the Attorney General was without authority to argue the remaining claims, but the undersigned denied this motion for the reasons detailed in a separate order. (ECF No. 25.)

Once the relevant proceeding "is found to fit into one of the three NOPSI categories listed above," courts apply a three-step analysis to determine if abstention is warranted. Doe, 860 F.3d at 369. First, "there must have been an ongoing state judicial proceeding when the complaint was filed." Youssef v. Schuette, No. 19-1225, 2019 WL 11753787, at *2 (6th Cir. Sept. 17, 2019) (citing Middlesex Cty. Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432-34 (1982)). Second, that ongoing state proceeding "must involve an important state interest." Id. Finally, the proceeding must give plaintiffs an "adequate opportunity" to raise any constitutional claims they may have. Id. At this last step, it is presumed the opportunity to raise constitutional claims exists; the plaintiff "bears the burden of showing that a clear state-law bar" to raising constitutional claims exists. Id. (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987)).

1. NOPSI Categories

The defendants argue that the state cosmetology disciplinary proceedings against Harris are the type of "civil enforcement proceedings akin to criminal prosecutions" to which Younger abstention applies.[6] These types of proceedings typically feature "a state actor [who] is routinely a party to the state proceedings

---

[6]Harris does not substantively respond to this argument, but instead focuses on disputing whether the three-step Younger test is satisfied here.

and often initiates the action" and are "initiated to sanction the federal plaintiff." Doe, 860 F.3d at 369 (quoting Sprint, 571 U.S. at 78 (internal quotation marks omitted)). Common indicators include "an investigation and formal complaint, the seriousness of consequences, the availability of a hearing, [and] the introduction of witnesses or evidence[.]" Alexander v. Morgan, 353 F. Supp. 3d 622, 627 (W.D. Ky. 2018) (citing Sprint, 571 U.S. at 81).

Whether the Tennessee State Board of Cosmetology's disciplinary process falls within this category appears to be an issue of first impression. However, the Sixth Circuit has previously found similar state administrative proceedings to qualify. See Youssef, 2019 WL 11753787, at *2 (state medical board licensure proceedings); Doe, 860 F.3d at 370 (state university disciplinary proceedings); Alexander v. Rosen, 804 F.3d 1203, 1207 (6th Cir. 2015) (state child custody and support hearings); Watts v. Burkhart, 854 F.2d 839, 846 (6th Cir. 1988) (state medical license suspension proceedings). Further, the proceedings here contain many of the features that Sprint contemplated these quasi-criminal proceedings would possess. The disciplinary proceedings were initiated by an investigation and a formal complaint, are resolved through a hearing process where witnesses and evidence may be presented, and involve serious consequences including the loss of a business license. (ECF No. 1-9.) Based on Sixth Circuit

precedent and the nature of the proceedings, the undersigned finds that the state cosmetology disciplinary proceedings are quasi-criminal proceedings under NOPSI. Because of this finding, the undersigned must now determine whether Younger abstention applies.

    2. Younger Factors

Federal courts abstain under Younger where three factors are met. First, there must be ongoing state judicial proceedings. Sun Refining & Marketing Co. v. Brennan, 921 F.2d 635, 639 (6th Cir. 1990). For purposes of this factor, "the State's trial-and-appeals process is treated as a unitary system[.]" Morgan, 353 F. Supp. 3d at 628 (citing NOPSI, 491 U.S. at 369). As the Supreme Court has stated, "a necessary concomitant of Younger is that a party wishing to contest in federal court the judgment of a state judicial tribunal must exhaust his state appellate remedies before seeking relief in the District Court." Id. (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975)). For their part, the defendants phrase this factor as requiring that "there must have been an ongoing state judicial proceeding *when the complaint was filed.*" (ECF No. 10-1 at 5) (quoting Youssef, 2019 WL 11753787, at *2) (emphasis added). This phrasing seems to appear only in Youssef and, notably, differs from the more common, arguably ambiguous phrasing that there must merely be "ongoing state proceedings."

Here, it appears this factor is satisfied regardless of the relevant time that the proceedings must be ongoing. It is

undisputed that the proceedings were ongoing at the time Harris's complaint was filed: Harris filed a Motion for a Temporary Restraining Order seeking to enjoin the administrative proceedings only a week after her complaint. (ECF No. 8.) While the administrative portion of these proceedings seemingly resolved on December 9, 2021, Harris may still appeal the administrative decision with the state Chancery Court, leaving her with an unexhausted state appellate remedy.[7] (ECF No. 18-1 at 24.) Thus, regardless of when exactly the proceedings must be ongoing, they are clearly ongoing here. The first element of Younger is satisfied.

Second, Younger abstention applies if the ongoing state proceedings implicate an "important state interest." Youssef, 2019 WL 11753787, at *2 (citing Middlesex Cty., 457 U.S. at 432-34 (1982)). If the "state has a substantial legitimate interest in the kind of state proceeding at issue" then this factor is satisfied. Nimer v. Litchfield Tp. Bd. of Trustees, 707 F.3d 699, 701 (6th Cir. 2013).

The defendants argue that "courts have consistently held the regulation and discipline of professions to be an important state function." (ECF No. 10-1 at 5.) The undersigned agrees. Multiple

---

[7] Harris's objections all focus on whether the state appeal provides "an adequate opportunity to raise acts to support constitutional challenges" and thus will be addressed below. (ECF No. 18-1 at 6.)

cases have found that states have an important interest in regulating medical licenses, legal licenses, and other professional activities. See Squire v. Coughlan, 469 F.3d 551, 556 (6th Cir. 2006) ("the state has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses"); Al-Marayati v. Univ. of Toledo, 145 F.3d 1329 (table), 1998 WL 252760, at *6 (6th Cir. 1998)("the State certainly has an important interest in monitoring and disciplining the conduct of faculty members at institutions of higher education which are financially subsidized by the state"); Watts, 854 F.2d at 846 (medical disciplinary proceedings); Kalniz v. Ohio State Dental Bd., 699 F. Supp. 2d 966, 972 (S.D. Ohio 2010) ("the regulation of the practice of dentistry is an important state interest"). While no case from this circuit has yet dealt with state cosmetology board proceedings, the undersigned does not find them distinguishable from administrative proceedings involving other state regulated, licensed professions. At least one other district court has agreed. Cornwell v. California Bd. of Barbering and Cosmetology, 962 F. Supp. 1260, 1268 (S.D. Cal. 1997) ("The state has an important interest in regulating the conduct of its professions [including cosmetology and barbering].") The proceedings here directly bear on Tennessee's ability to regulate its cosmetology and barbering licenses and implicate an important state interest. The second element of Younger is satisfied.

The final condition for Younger abstention requires that the state proceeding "affords an adequate opportunity for the federal plaintiffs to raise their constitutional claims." Nimer, 707 F.3d at 701. The plaintiff bears the burden of showing that "state procedural law barred presentation of their constitutional claims." Id. (citing Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n, 925 F.2d 962, 969 (6th Cir. 1991)). Abstention will be appropriate unless "state law clearly bars the interposition of the constitutional claims." Squire, 469 F.3d at 556 (quoting Fieger v. Thomas, 74 F.3d 740, 745 (6th Cir. 1996)).

Harris has not shown that state procedural law bars her constitutional claims. The Tennessee Cosmetology Act of 1986, which established the disciplinary process at issue here, is governed by the Uniform Administrative Procedures Act ("UAPA"). Tenn. Code Ann. § 62-4-130. The Sixth Circuit has previously held that "judicial review under [the UAPA] satisfies the third element of the Younger analysis because it provides sufficient opportunity to litigate constitutional claims." Fed. Express Corp., 925 F.2d at 970 (citing Ohio Civil Rights Comm'n v. Dayton Christian Schools, 477 U.S. 619, 629 (1986) (holding that "it is sufficient [for the third element of Younger] . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding")). Harris may still appeal the Board's administrative decision with the Tennessee Chancery Court. As she notes in her

response to the Motion to Dismiss, (ECF No. 18-1 at 6), these appeals are governed by Tennessee Code Annotated § 4-5-322, which provides that the Chancery Court "may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are in violation of constitutional or statutory provisions." Tenn. Code Ann. § 4-5-322(g)-(g)(1). Tennessee procedural law allows Harris's constitutional claims to be heard.

With these three elements satisfied, abstention is only inappropriate if "the plaintiff[s] can show that . . . bad faith, harassment, or flagrant unconstitutionality" underlies the case against them. Squire, 469 F.3d at 556 (quoting Fieger, 74 F.3d at 750). While Harris has alleged a campaign of harassment and unconstitutional discrimination against her business, she has not provided sufficient facts at this stage to demonstrate that "the [Board's] actions against [*her*] were motivated by bad-faith or with intent to harass." Fieger, 74 F.3d at 750 (emphasis in original). The facts she has introduced demonstrate one ongoing administrative case against her schools. Without facts that this case is the result of state harassment, rather than genuine enforcement efforts, the court cannot grant this "rarely applied" exception. Kalniz, 699 F. Supp. 2d at 973 (finding, as of 2010, "no Sixth Circuit cases which ha[ve] ever authorized federal intervention under the bad faith or harassment exception"); see

also Doe, 860 F.3d at 371 (noting that "conclusory statements" are not enough to show harassment); Video Store, Inc. v. Holcomb, 729 F. Supp. 579, 580 (S.D. Ohio 1990) (finding a "prima facie case of harassment" where plaintiffs were subjected to twelve civil enforcement actions and five criminal prosecutions by three different municipalities).

### III. RECOMMENDATION

For the above reasons, it is recommended that the Motion to Dismiss be granted as to the claims against the Board. It is further recommended that the court deny the Motion to Dismiss without prejudice as to all other claims, abstain from exercising its jurisdiction, and administratively close the case until notice of the conclusion of the underlying state proceedings is filed.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

January 24, 2022
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**